USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  7/13/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

CITYSIDE ARCHIVES, LTD.,

                               Plaintiff,

                    -v-

BARBARA J. WEISS, as personal representative
of the Estate of Melvyn I. Weiss, and JOHN
DOES NO. 1-4, as personal representatives of
the Estate of Melvyn I. Weiss,

                            Defendants.

------------------------------------------------------------ :

BARBARA J. WEISS, as personal representative
of the Estate of Melvyn I. Weiss,

                    Third-Party Plaintiff,

                    -v-

MILBERG LLP, MILBERG TADLER
PHILLIPS GROSSMAN LLP, MILBERG
PHILLPS GROSSMAN LLP, ARIANA J.
TADLER, PEGGY J. WEDGWORTH, R.
GLENN PHILLIPS, and MARC D.
GROSSMAN,

                    Third-Party Defendants.

------------------------------------------------------------ X

1:18-cv-5077-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

      Melvyn Weiss was a partner at Milberg LLP ("Milberg").  Milberg contracted with Cityside

Archives Ltd. ("Cityside") for document storage services.  Years after the parties signed the original

contract, Milberg encountered legal troubles.  Because of those legal problems, Cityside became

worried that Milberg would be unable to make good on its obligations.  So Cityside demanded that

one of Milberg's partners personally guarantee Milberg's debt.  So Weiss signed a guaranty (the

"Guaranty") with Cityside.  The Guaranty explicitly designates Weiss as a "primary obligor and not

merely a[] surety[.]"  Weiss then left Milberg two years later.

Almost a decade after Weiss left the firm, Milberg defaulted on its contract with Cityside. After Milberg defaulted, Weiss died.  Cityside sued his estate (the "Estate").  Cityside and the Estate settled the Estate's claims for $1.6 million

The Estate, in turn, sued Milberg and its successors, Milberg Tadler Phillips Grossman LLP ("Milberg Tadler") and Milberg Philips Grossman LLP ("Milberg II").  The Estate alleges that some of Milberg's partners, who are named as third-party defendants here, conspired to loot Milberg by transferring its assets to Milberg II.

The Estate asserts claims for subrogation, indemnification, and fraudulent conveyance against Third-Party Defendants in connection with its settlement with Cityside.  Essentially, the Estate argues that Milberg should reimburse it for the $1.6 million it paid to Cityside.  The Court cannot determine on this motion to dismiss whether Weiss was, in substance, a primary obligor or a surety under the Guaranty, so Third-Party Defendants' motion to dismiss the subrogation claim is DENIED.  Because the subrogation claim survives, Third-Party Defendants' motion to dismiss the fraudulent conveyance claim is also DENIED.  But the plain text of the Guaranty forecloses the Estate's indemnification claim, so Third-Party Defendants' motion to dismiss that claim is GRANTED.

# I. BACKGROUND[1]

Weiss co-founded Milberg in 1965.  TPC ¶ 14.  He was a named partner at Milberg's

predecessor, Milberg Weiss Bershad & Schulman.  *Id.* ¶ 1.  Weiss helped "build[] the firm into a class

action juggernaut" that "recover[ed] billions of dollars for victims of corporate fraud."  *Id.*

In 1998, Milberg signed an agreement (the "Agreement") with Cityside.  *Id.* ¶ 15.  Cityside

agreed to provide document storage and archiving services to Milberg.  TPC ¶ 15.  In 2006, Cityside

"requested that a Milberg partner provide a personal guarantee of Milberg's payment obligations

under the Agreement . . . [b]ecause of payment concerns arising from unrelated criminal proceedings

involving Milberg[.]"  *Id.* ¶ 16.  Milberg allegedly asked Weiss to provide this guaranty.  *Id.*  So Weiss

executed the Guaranty "to induce Cityside to continue performance under the Storage and Service

Agreement[.]"  Guaranty, Ex. A to Complaint ("Compl."), Dkt No. 2-1, at 1; *see also* TPC ¶ 16.  In

the Guaranty, Weiss agreed to:

> absolutely, unconditionally and irrevocably guarantee[] to Cityside, its successors and
> assigns, as primary obligor and not merely as surety . . . the full, due and punctual
> payment of amounts due under the Agreement, including monthly storage and service
> charges, and . . . the fulfillment of all the terms and conditions of the Agreement[.]

Guaranty at 1.  Weiss also "agree[d] to not exercise any rights which [he] may acquire by way of

subrogation under this Guaranty, by any payment made hereunder or otherwise, until all of the

[o]bligations shall have been paid in full."  *Id.* at 2.  The Guaranty is governed by New York law.  *Id.*

at 3.

Weiss left Milberg and stopped practicing law in 2008.  TPC ¶ 17.  Milberg defaulted on its

obligations to Cityside under the Agreement in 2017.  *Id.* ¶ 18.  Milberg "actively operated as a

plaintiffs' class action and corporate litigation law firm . . . at least until" January 2018.  *Id.* ¶ 5.  But

---

[1] The facts are drawn from the amended third-party complaint ("TPC"), Dkt No. 140.  For this motion, the Court must accept as true the facts alleged in the third-party complaint.  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).  But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Milberg Tadler—which became Milberg II in June 2019—"has operated" Milberg's "legal practice" since January 2018. *Id.* ¶ 6. After Milberg defaulted, Cityside demanded that Weiss pay under the Guaranty. *Id.* ¶ 18.

The Estate alleges "upon information and belief" that Cityside "did not bring a claim against its customer Milberg because" Third-Party Defendants "rendered it an empty shell" when they formed Milberg II in January 2018. *Id.* ¶ 20. The gravamen of the Estate's claims against the Third-Party Defendants is that they "caused Milberg to distribute . . . tens of millions of dollars of legal fees . . . to the equity partners . . . [i]nstead of using the fees to capitalize the firm[.]" *Id.* ¶ 23. These distributions allegedly "left Milberg with insufficient capital and unable to pay its debts as they became due." *Id.* ¶ 24. And the Estate alleges that "the distributions were part of a common plan and scheme by third-party defendants to fraudulently avoid nonessential creditors and vendors by stripping Milberg of its assets[.]" *Id.*

In brief, the plan was to form Milberg II to avoid the claims of Milberg's creditors. *Id.* "Upon information and belief," the Estate alleges that Third-Party Defendants "decided not to pay Cityside because the files stored by Cityside" were old and were unnecessary "for the ongoing operation of the law practice." *Id.* ¶ 27. So Third-Party Defendants allegedly stiffed Cityside and left the Estate holding the bag.

Weiss died in February 2018 and Barbara Weiss was appointed as personal representative of his estate in June 2018. *Id.* ¶ 4. The same month, Cityside sued the Estate, seeking about $2 million in damages. Compl. ¶ 1. Cityside's claims against the Estate were the primary claims in this lawsuit.

The Estate allegedly demanded that Milberg indemnify it or independently resolve Cityside's claims, but Milberg didn't respond to those demands. TPC ¶ 21. So the Estate was forced to defend the main action. A few months later, the Estate filed a third-party complaint, asserting a claim for indemnification against Milberg and Milberg Tadler and claims of fraudulent conveyance

against all the third-party defendants.  Dkt No. 24.

Cityside moved to strike the third-party complaint under Federal Rule of Civil Procedure 14. Dkt Nos. 64-66; *see also* Fed. R. Civ. P. 14(a)(4) ("Any party may move to strike the third-party claim, to sever it, or to try it separately.").  Cityside also moved for summary judgment, seeking almost $2.5 million in damages.  Dkt No. 72.  The Estate opposed both motions.  Dkt Nos. 68, 87.  Third-Party Defendants also opposed Cityside's motion for summary judgment.  Dkt No. 90.

While those motions were pending, Cityside and the Estate settled the primary claims.  Dkt No. 128; TPC ¶ 22.  "[T]he Estate paid Cityside $1.6 million to settle Cityside's claim for file[] storage fees owed by Milberg."  TPC ¶ 22.

The Estate then amended the third-party complaint.  Dkt No. 140.  Like the original third-party complaint, the amended third-party complaint asserts claims for indemnification and fraudulent conveyance.  *See id.*  The amended third-party complaint also asserts a claim for subrogation against the Milberg Defendants.  *See id.*  Third-Party Defendants moved to dismiss the third-party complaint.  Dkt Nos. 141-43.  The Estate opposed the motion, Dkt No. 148, and Third-Party Defendants replied, Dkt No. 149.

## II. LEGAL STANDARD

"A motion to dismiss a counterclaim, third-party claim, and cross-claim is evaluated under the same standard as a motion to dismiss a complaint."  *N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, No. 12-cv-3584 (JCF), 2013 WL 1500333, at *2 (S.D.N.Y. Apr. 12, 2013) (citations omitted); *see also* Fed. R. Civ. P. 12(b)(6) (permitting a defendant to move to dismiss for "failure to state a claim upon which relief can be granted").  On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are

inadequate.  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  And "the tenet that a court must accept" as true a complaint's factual allegations does not apply "to legal conclusions." *Iqbal*, 556 U.S. at 678.

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570.  A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The plaintiff's claim must be more than merely "speculative[.]" *Twombly*, 550 U.S. at 545.  And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility. *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint[.]" *Field Day, LLC v. Cty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006).  But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)).  A court may also consider a document "solely relie[d]" on by the plaintiff if it "is integral to the complaint[.]" *Id.* (quotation omitted).  A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect[.]" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).  A plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Id.* at 231.  The Court has considered the Guaranty because it is incorporated by reference in the third-party complaint.  *See* TPC ¶ 16 ("The Guaranty is annexed as Exhibit A to the Complaint.").

## III. DISCUSSION

### A. Subrogation

The Estate has adequately pleaded a subrogation claim.  Subrogation is "[r]ooted in equity[.]" *Chem. Bank v. Meltzer*, 93 N.Y.2d 296, 304 (1999).  Its "purpose" is "to afford a person who pays a

debt that is owed primarily by someone else every opportunity to be reimbursed in full." *Id.* "A suretyship arrangement is, at its core, the confluence of three distinct, yet interrelated, obligations. These obligations are embodied in the tripartite relationship of principal obligor and obligee; obligee and secondary obligor; and secondary obligor and principal obligor." *Id.* at 302. "When a secondary obligor is bound to pay for the debt or answer for the default of the principal obligor to the obligee, the secondary obligor is said to have suretyship status." *Id.* (citing *Gen. Phoenix Corp. v. Cabot*, 300 N.Y. 87, 92 (1949)). In the language of *Meltzer*, Cityside is the obligee (also known as a creditor) and Milberg is a principal (or primary) obligor. The key question is whether Weiss is a secondary obligor, and thus a surety, or a primary obligor.

The Estate's subrogation claim turns on that question. Third-Party Defendants argue that the Estate is not entitled to subrogation because "one who makes a payment that is the primary obligation of the payor, as distinguished from a payment of the debt of another, is not entitled to subrogation." *In re Robbins Int'l, Inc.*, 275 B.R. 456, 471 (S.D.N.Y. 2002). The Guaranty says that Weiss is a "primary obligor and not merely a[] surety[.]" Guaranty at 1. So, Third-Party Defendants argue, the Estate is not entitled to subrogation.

That argument is foreclosed by the New York Court of Appeals' decision in *Meltzer*. There, the court considered a contract that made Meltzer liable "as a primary obligor and not merely as a surety." *Meltzer*, 93 N.Y.2d at 300. That is essentially the same language the Guaranty uses in this case. Meltzer argued that the "subrogation claim [was] barred by the express written agreement between the parties." *Id.* at 299. But the Court of Appeals rejected that argument. It held that "'a contract of suretyship *does not depend upon the use of technical words*'" and that courts "must first look to the substance of the entire transaction, rather than its form" to determine if a party is a surety, and thus entitled to subrogation, or a primary obligor. *Id.* at 302 (quoting *Cabot*, 300 N.Y. at 92 and citing Restatement (Third) of Suretyship & Guaranty § 1(3)(a) (1996)) (brackets omitted). *Meltzer*

7

thus forecloses Third-Party Defendants' argument that the plain language of the Guaranty shows that Weiss is a primary obligor and not a surety.

Third-Party Defendants argue that ordinary principles of contract interpretation foreclose the Estate's subrogation claim. Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *MHR Capital Partners LP v. Presstek, Inc.*, 12 N.Y.3d 640, 645 (2009). The Guaranty unambiguously designates Weiss as a "primary obligor and not merely a[] surety[.]" Guaranty at 1. But despite this general rule, *Meltzer* held that this language is inadequate to show that a party is a primary obligor and not a surety. *Meltzer* is directly on point and binds this Court. *See Matthews v. Barr*, 927 F.3d 606, 622 n.11 (2d Cir. 2019) ("[F]ederal courts are bound by the highest state court's interpretations of state law." (citations omitted)).

The Court need not determine "the nature of the underlying transaction" between Milberg and Weiss on this motion to dismiss. *Meltzer*, 93 N.Y.2d at 303. *Meltzer* was decided on summary judgment. *Id.* at 301; *see also Broadway Sky, LLC v. 53rd Street Holdings, LLC*, No. 654594/2012, 2019 WL 1502933, at *11 (N.Y. Sup. Ct. Apr. 4, 2019) (holding at summary judgment that a party was a surety based in part on "the substance of the entire transaction"). The Court will need to evaluate the evidence at summary judgment, looking to the substance of the entire transaction to determine whether Weiss is a surety or a primary obligor. So the Court cannot dismiss the subrogation claim.

Third-Party Defendants make two other arguments for dismissal. Neither is convincing. Third-Party Defendants first argue that the Estate should be judicially estopped from arguing that it is not a primary obligor. "[T]he equitable doctrine of judicial estoppel . . . prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 264 (2d Cir. 2018) (quotation omitted). The doctrine "protect[s] the integrity of the judicial process by prohibiting

8

parties from deliberately changing positions according to the exigencies of the moment" and "prevent[s] improper use of judicial machinery[.]" *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). Thus, judicial "estoppel applies to prevent a party from inequitably adopting a position directly contrary to or inconsistent with an earlier assumed position in the same proceeding or a prior proceeding." *In re WestPoint Stevens, Inc.*, 600 F.3d 231, 256 (2d Cir. 2010) (quoting *Shepardson by Shepardson v. Town of Schodack*, 599 N.Y.S.2d 700, 702 (3rd Dep't 1993)).

Estoppel is an equitable doctrine that "cannot be reduced to a precise formula or test[.]" *Zedner v. United States*, 547 U.S. 489, 504 (2006). The Second Circuit has nevertheless instructed that district courts should look to three factors in applying the doctrine. *See Clark*, 886 F.3d at 266. The first two are "[t]hat a litigant (i) took a prior inconsistent position and (ii) convinced an earlier tribunal to adopt that position[.]" *Id.* While these "may be *necessary*" for judicial estoppel, "they are not *sufficient*[.]" *Id.* A court must also "inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor'" of estopping a litigant from asserting the prior inconsistent position. *Id.* (quoting *New Hampshire*, 532 U.S. at 751). "[T]his inquiry begins by asking whether the prior inconsistent position in question gave the party to be estopped an 'unfair advantage' over the party seeking estoppel." *Id.* at 267 (quoting *BPP Ill., LLC v. Royal Bank of Scotland Grp. PLC*, 859 F.3d 188, 192 (2d Cir. 2017)).[2] But the "unfair advantage" element is "not required . . . in all circumstances." *Id.* (quoting *Adelphia Recovery Tr. v. Goldman Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014)). Instead, the question is whether the "balance of equities" weighs in favor of estoppel. *New Hampshire*, 532 U.S. at 751.

Judicial estoppel "is 'an equitable doctrine invoked by a court at its discretion.'" *Intellivision v.*

---

[2] *See also United States v. Cheng Le*, 902 F.3d 104, 117 n.11 (2d Cir. 2018) ("[J]udicial estoppel requires showing (1)" that a "party's position is 'clearly inconsistent' with its earlier position, (2)" that the "former position 'has been adopted in some way' in prior court proceeding, and (3)" that the "party asserting two positions derives [an] 'unfair advantage against the party seeking estoppel[.]'" (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010))).

*Microsoft Corp.*, 484 F. App'x 616, 619 (2d Cir. 2012) (quoting *New Hampshire*, 532 U.S. at 749-50); *see also Ithaca Capital Investments I S.A. v. Trump Panama Hotel Mgmt. LLC*, No. 18-cv-390 (ER), 2020 WL 1503561, at *8 (S.D.N.Y. Mar. 30, 2020); *Clark*, 886 F.3d at 265-66 (holding that a district court's application of judicial estoppel is reviewed for abuse of discretion).

The Court will not exercise its discretion to estop the Estate from arguing that Weiss was a primary obligor and not a surety because Third-Party Defendants have not shown that the balance of equities weighs in favor of estoppel. Third-Party Defendants note that the Estate argued earlier in this litigation that the "Guaranty at bar makes Weiss primarily liable 'as primary obligor and not merely as surety'" and that "[e]quitable subrogation . . . is a right granted only to someone who pays an obligation for which he or she is not primarily liable" earlier in this litigation. Dkt No. 68 at 8. The Estate notes that it made that argument in the context of an indemnification—not a subrogation—claim. But even assuming that this position is inconsistent with the argument that the Estate now advances, the Court never adopted that position. Third-Party Defendants argue "that leveraging a prior position into a successful settlement can provide the basis for judicial estoppel." Opp. at 9 (citing *Matter of 10 Martin v. C. A. Prods. Co.*, 8 N.Y.2d 226, 231 (1960)). The Court is dubious that the Estate "leverag[ed]" its prior position into a successful settlement. *Id.*

Even adopting Third-Party Defendants' characterization, however, they have not shown that the balance of equities tips in their favor. Recall the facts as alleged: Milberg had a contract with Cityside. Years after the original contract between Cityside and Milberg was executed, Cityside worried that Milberg would be unable to pay its debt. So Cityside demanded that someone at Milberg personally guarantee the debt. Weiss gave that personal guarantee. Now the Estate has paid Cityside and is seeking subrogation. If anything, the balance of equities tips decidedly in favor of permitting the Estate to pursue a subrogation claim. And the Second Circuit has instructed that district courts should "prefer[s] [to] resol[ve] . . . disputes on their merits." *Rodriguez v. Vill. Green*

10

*Realty, Inc.*, 788 F.3d 31, 47 (2d Cir. 2015) (quotation omitted).  That preference also weighs against

the application of judicial estoppel to foreclose evaluation of the Estate's subrogation claim on the

merits.  For those reasons, judicial estoppel is not warranted here.

      Third-Party Defendants' final argument is that because the Estate settled for $1.6 million

instead of the full $2.4 million Cityside claims it was owed, the Estate has no subrogation rights.

That argument is unavailing.  True, a "surety acquires no subrogation rights to pursue the debtor

until the creditor is required to release its collateral[.]"  Reply Memorandum of Law in Support of

Motion to Dismiss ("Rep."), Dkt No. 149, at 1 (quoting *Winkelmann v. Excelsior Ins. Co.*, 85 N.Y.2d

577, 582 (1995)).  But that principle does not apply in these circumstances.  The general rule against

partial subrogation is intended to protect creditors like Cityside, not primary debtors like Milberg.

Cityside has been "made whole" by its settlement with the Estate.  *Winkelmann*, 85 N.Y.2d at 583.

      *Winkelmann* shows why.  *Winkelmann* reasoned that "[t]he obligation assumed by a surety

runs to the creditor and subrogation may not in any way defeat the creditor's rights."  *Id.* at 582.

"The surety[,]" *Winkelmann* explained "provides the creditor with a source of collateral or security

for the debt of another, and the creditor may not be required to surrender any part of his collateral

till payment has been made in full."  *Id.* (quotation omitted).  Indeed, as noted, "the surety acquires

no subrogation rights to pursue the debtor until the creditor is required to release its collateral, i.e.,

when the creditor is made whole."  *Id.*  That is because "[a]ny rule permitting the surety to recover

its losses from the defaulting debtor *pro tanto* would interfere with the creditor's right to be made

whole and would vitiate the value of the collateral of the surety."  *Id.* at 582-83.

      To see why *Winkelmann*'s rule makes sense, imagine that the Estate had paid $1 million to

Cityside as a surety but that Cityside demanded payment of the outstanding $1.4 million.  Then

imagine that the Estate asserted a subrogation claim against the Milberg Defendants.  The Estate

could not recover for subrogation in that circumstance because Cityside would have priority over

11

any money coughed up by Milberg.  In other words, Milberg would have to pay Cityside first before the Estate could recover a subrogation claim.  Otherwise, the subrogation claim would elevate the Estate, a surety, over Cityside, a creditor.  But the whole point of having a surety is to ensure that the *creditor* gets paid.  So it wouldn't make sense to let a surety use a subrogation claim to get paid before a creditor.[3]

The rule against partial subrogation does not support dismissal of the Estate's subrogation claim.  Third-Party Defendants argue that the Estate's settlement with Cityside was only a partial payment that cannot give rise to a subrogation claim.  As explained, the principle that partial satisfaction of a debt does not give rise to a right for subrogation applies to protect creditors.  But Cityside settled its claim and needs no further protection.  Because Cityside is no longer seeking payment, it has no dog in the fight between Milberg and the Estate.  Any money paid out by the Milberg Defendants to the Estate would not come at Cityside's expense.  At least for purposes of the Estate's subrogation claim, therefore, Cityside has been paid "in full."  *Winkelmann*, 85 N.Y.2d at 582.  The subrogation claim is sufficiently alleged, so Third-Party Defendants' motion to dismiss is denied.

### B. Implied Indemnification

The Estate's indemnification claim is dismissed because it is foreclosed by the unambiguous text of the Guaranty.  Under New York law, "[t]he principle of 'common-law, or implied indemnification, permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party.'"  *Tiffany at Westbury Condo. by Its Bd. of Managers v. Marelli Dev. Corp.*, 840 N.Y.S.2d 74, 78 (2d Dep't 2007) (quoting *17 Vista Fee Assocs. v.*

---

[3] This reasoning explains why there is an exception to the rule against partial subrogation when the creditor "acquiesces" in partial subrogation.  Rep. at 2 (quoting *Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d 1042, 1047 (2d Cir. 1992)).  If "the primary creditor objects to the partial subrogation, and this objection is made to protect the primary creditor's interests, then the subrogation claim necessarily must fail."  *Grant Thornton v. Syracuse Sav. Bank*, 961 F.2d at 1047.  But if the creditor does not object, then the subrogation claim can go forward.

*Teachers Ins. & Annuity Ass'n of Am.*, 693 N.Y.S.2d 554, 557 (1st Dep't 1999) and citing *D'Ambrosio v. New York*, 55 N.Y.2d 454, 460 (1982); *McDermott v. New York*, 50 N.Y.2d 211, 217 (1980)).  As with subrogation, implied indemnification is "root[ed] in the principles of equity."  *McDermott*, 50 N.Y.2d at 216-17.

The Estate's indemnification claim rests on an unusual application of implied indemnification principles.  Indemnification traditionally arises when a tort has been committed against a third party.  *See, e.g.*, *Barbagallo v. Marcum LLP*, No. 11-cv-1358 (JBW), 2012 WL 1664238, at *6 (E.D.N.Y. May 11, 2012) ("In the classic indemnification case, 'the one seeking indemnity had committed no wrong, but by virtue of some relationship with the tort-feasor or obligation imposed by law, was nevertheless held liable to the injured party.'") (quoting *Glaser v. Fortunoff of Westbury Corp.*, 71 N.Y.2d 643, 646 (1988)) (emphasis omitted).  But the Estate does not argue that Third-Party Defendants committed a tort; it argues that Third-Party Defendants breached their contract with Cityside.  It is also true that "[i]mplied indemnity is frequently employed in favor of one who is vicariously liable for the tort of another, but the principle is not so limited and has been invoked in other contexts as well."  *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24 (1985) (citations omitted).  The Court need not decide whether indemnification properly applies on these facts because even if it does, the Estate has not sufficiently alleged an indemnification claim.

The intersection of two legal principles leads to the conclusion that the Estate's indemnification claim is inadequately pleaded.  The first is that the duty of implied indemnification is subject to a significant exception:  "[C]ommon-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff[.]"  *Monaghan v. SZS 33 Assocs., Ltd.*, 73 F.3d 1276, 1284 (2d Cir. 1996); *see also In re Sept. 11 Litig.*, 751 F.3d 86, 94 (2d Cir. 2014) ("Under New York law, an indemnitor must bear some fault for the damages suffered by the indemnitee, whether on account of negligence, equitable

13

considerations, or statutory requirements.”); *Ilkowitz v. Durand*, No. 17-cv-773 (PGG), 2018 WL 1595987, at *13 (S.D.N.Y. Mar. 27, 2018) (“[A] common-law indemnity claim is available only where one tortfeasor is held liable purely on account of another’s negligence.” (quotation omitted)). Indeed, “a party must ‘establish that it cannot be held responsible for the underlying injuries to any degree.’” *Am. Fed’n of Musicians & Employers’ Pension Fund v. Neshoma Orchestra & Singers, Inc.*, No. 17-cv-2640 (JGK), 2018 WL 2338764, at *7 (S.D.N.Y. May 23, 2018) (quoting *Buchwald v. Verizon New York, Inc.*, 860 N.Y.S.2d 360, 361 (4th Dep’t 2008)) (brackets omitted); *see also Cunha v. City of N.Y.*, 12 N.Y.3d 504, 509 (2009) (“[A] party may settle and then seek indemnification from the party responsible for the wrongdoing as long as the settling party shows that it may not be held liable in any degree.” (citing *Rosado v Proctor & Schwartz*, 66 N.Y.2d 21 (1985)).

The second principle is that courts must enforce the plain terms of an unambiguous contract. Under New York law, the “fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties’ intent.” *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) (quotation omitted). “The best evidence of what parties to a written agreement intend is what they say in their writing[.]” *Id.* (quotation omitted). “Thus, a written agreement that is complete, clear and unambiguous on its face must be [interpreted] according to the plain meaning of its terms[.]” *Id.*; *see also South Rd. Assocs., LLC v. IBM*, 4 N.Y.3d 272, 277 (2005) (“In cases of contract interpretation, it is well settled that when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms.” (quotation omitted)).

Together, these two principles require dismissal of the Estate’s implied indemnification claim. As discussed, the Guaranty designates Weiss as a “primary obligor and not merely a[] surety.” Guaranty at 1. Thus, by the plain terms of the Guaranty, Weiss and the Milberg Defendants were both primarily liable to Cityside for Milberg’s debt. Because the Guaranty makes Weiss a primary

14

obligor, Weiss and the Milberg Defendants violated the same duty to Cityside.  The contract is unambiguous, so the Estate does not have a valid indemnification claim.

Unlike for its subrogation claim, the Estate has not pointed to a Court of Appeals precedent holding that the Court may (or must) disregard the plain text of a contract and conduct an inquiry into whether Weiss is really a primary obligor.  And the Court is aware of no such precedent.  So the indemnification claim is subject to the general rule that "[t]he best evidence of what parties to a written agreement intend is what they say in their writing."  *Greenfield*, 98 N.Y.2d at 569 (quotation omitted).  The Estate's attempt to dismiss this unambiguous contractual term as an "errant reference" is unpersuasive.  Opposition to Motion to Dismiss, Dkt No. 148, at 11.  The first sentence of the Guaranty designates Weiss as a primary obligor.  There is nothing "errant" about that designation.  Even if the result is harsh, a court applying New York law "may neither rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous, nor redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case."  *Bank of New York Mellon v. WMC Mortg., LLC*, 12-cv-7096 (DLC), 2015 WL 2449313, at *2 (S.D.N.Y. May 22, 2015) (quoting *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992)).  For that reason, the indemnification claim must be dismissed.

### C. Fraudulent Conveyance

The Estate has adequately pleaded its fraudulent conveyance claims because it has adequately pleaded a subrogation claim.  To challenge "a fraudulent conveyance, one must be a creditor of the transferor[.]"  *Eberhard v. Marcu*, 530 F.3d 122, 129 (2d Cir. 2008).  That is because "those who are not injured by the transfer lack standing to challenge it."  *Id.*; *see also* N.Y. Debt. & Cred. Law § 276.  New York law defines a "creditor" as "a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."  N.Y. Debt. & Cred. Law § 270.  Third-Party Defendants argue that the Estate is not a "creditor" of Third-Party Defendants.  But that

argument is contingent on the Court dismissing the Estate's subrogation and indemnification claims. Because the Estate has adequately pleaded its subrogation claim, this argument—Third-Party Defendants' only argument for dismissal—is insufficient.

## IV. CONCLUSION

Third-Party Defendants' motion to dismiss is GRANTED and DENIED in part. The Court cannot determine whether Weiss was, in substance, a primary obligor or a surety on this motion to dismiss, so the Estate's subrogation claim survives. Because the subrogation claim survives, the fraudulent conveyance claim also survives. But the Estate's indemnification claim is foreclosed by the plain text of the Guaranty.

The Clerk of Court is directed to terminate the motion pending at Dkt No. 141.

SO ORDERED.

Dated:  July 13, 2020

_____
GREGORY H. WOODS
United States District Judge